UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | | |
|---|---|---|
| AUTO-OWNERS INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 2:13 CV 35 RWS |
| WAYNE PRUITT, | ) ) ) | |
| Defendant. | ) | |

# MEMORANDUM AND ORDER

This matter is before the Court on the parties' cross motions for summary judgment on whether Plaintiff Auto-Owners is entitled to subrogation recovery from Defendant Pruitt.

Larry Apperson was injured in a car accident caused by defendant Wayne Pruitt. After the accident, plaintiff Auto-Owners Insurance Company ("Auto-Owners") paid Apperson $500,000 pursuant to the underinsured motorist provision of its policy with Apperson. Auto-Owners argues that Pruitt should reimburse it for the $500,000 payment to Apperson because Pruitt was responsible for the car accident. Defendant Pruitt argues that Auto-Owners has no right of recovery against him because Missouri law prohibits subrogation recovery for personal injuries. For the following reasons, defendant Pruitt is entitled to judgment as a matter of law.

## Summary Judgment Standard

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Lynn v. Deaconess Medical Center, 160 F.3d 484, 486 (8th Cir. 1998) (citing Fed. R. Civ. P. 56(c)). The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and

1

identifying those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof. Id. at 324. In resisting a properly supported motion for summary judgment, the plaintiff has an affirmative burden to designate specific facts creating a triable controversy. Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004).

**Background**

On January 6, 2012, Larry Apperson was injured in a car accident that occurred in Audrain County, Missouri. Apperson was a passenger in a car driven by Wayne Pruitt. Apperson notified his insurer, Auto-Owners Insurance Company, of the accident and requested a copy of his insurance policy. Apperson then filed suit in Missouri state court against the driver of the car, Wayne Pruitt. After Apperson filed his action against Pruitt, he sent Auto-Owners a copy of the petition. Auto-Owners did not intervene in the lawsuit.

Before the case went to trial, Apperson and Pruitt entered into a Section 537.065 Agreement. MO. REV. STAT. § 537.065 (2014). The agreement provided that while the parties would still participate in a bench trial, Apperson would limit his recovery against Pruitt to $100,000, the limit of Pruitt's insurance policy. On October 22, 2012, following a bench trial, Apperson received a judgment against Pruitt for $2,500,000. Soon afterwards, Pruitt's insurer paid Apperson $100,000 in satisfaction of the judgment.

After the trial, Apperson made a claim to Auto-Owners under the underinsured motorist insurance provision of his policy. Auto-Owners refused to pay on the grounds that Apperson had

2

breached his obligation to preserve Auto-Owners' subrogation rights when he settled with and released Pruitt for less than his full liability. On March 14, 2013, Apperson filed this action against Auto-Owners in the Circuit Court of Randolph County, Missouri, seeking a declaration that Auto-Owners owed him underinsured motorist coverage. On April 19, 2013, Auto Owners removed the action to this Court based on diversity jurisdiction.

On November 6, 2013, with leave of the Court, Auto-Owners filed a third-party complaint against Pruitt. In the complaint, Auto-Owners sought declaratory judgment that it would be entitled to subrogation recovery against Pruitt in the event it was determined to owe coverage to Apperson. On December 5, 2013, Pruitt moved to dismiss Auto-Owners' claims for lack of jurisdiction, arguing that only an insured can bring an action for subrogation recovery.

Prior to my ruling on Pruitt's motion to dismiss, on December 6, 2013, Auto-Owners and Apperson voluntarily settled their claims. Auto-Owners agreed to pay Apperson $500,000 under the underinsured motorist insurance provision of the policy, and it has since satisfied that obligation. On December 13, 2013, I dismissed all claims and counterclaims between Auto-Owners and Apperson. On February 13, 2014, I denied Pruitt's Motion to Dismiss and allowed Auto-Owners to pursue subrogation in its own name. Thus, the only claims remaining in this case are Auto-Owners' claims against Pruitt.

On August 15, 2014, Pruitt filed a motion for summary judgment, arguing that 1) Auto-Owners has no direct right of action against him, 2) any subrogation right in the Auto-Owners policy is void as against Missouri policy prohibiting the assignment of a personal injury cause of action, which the Missouri Supreme Court recently clarified in <u>Nevils v. Grp. Health Plan, Inc.</u>, 418 S.W.3d 451, 453 (Mo. 2014), and 3) the Court should not grant equitable relief for the same public policy reasons.

On August 18, 2014, Auto-Owners filed its motion for summary judgment, arguing that it is entitled to subrogation recovery for the underinsured motorist payment it made to Apperson because Pruitt is the party responsible for Apperson's injuries and Apperson's agreement to release Pruitt for less than his full liability did not destroy Auto-Owners' subrogation rights. Auto-Owners further argues that Missouri policy disfavoring subrogation for a personal injury cause of action does not bar recovery under these circumstances because the claim has been reduced to a judgment and because Pruitt knew of Auto-Owners' subrogation rights when he settled with Apperson.

## **Discussion**

The facts involving the car accident at issue here are not in dispute. Rather, the issues presented are: (1) whether the insurance policy between Auto-Owners and Apperson provides Auto-Owners with a right to subrogation recovery from Pruitt, and, if so, (2) whether the provision is nonetheless void as contrary to Missouri policy, and/or, (3) whether Auto-Owners is entitled to equitable subrogation.

As an initial matter, Pruitt argues that the policy merely provides Auto-Owners with a right to reimbursement from any proceeds that Apperson receives from Pruitt, and not a right to subrogation recovery. Under Missouri law, the interpretation of the meaning of an insurance policy is a question of law. Seeck v. Geico General Ins. Co., 212 S.W.3d 129, 132 (Mo. 2007); Am. Fam. Mut. Ins. Co. v. Turner, 824 S.W.2d 19, 21 (Mo. Ct. App. 1991). The court shall enforce an insurance contract as written unless the language of the policy is ambiguous or undermines public policy. Cameron Mut. Ins. Co. v. Madden, 533 S.W.2d 538, 544-545 (Mo. 1976); Seeck, 212 S.W.3d at 132; Hunt v. Everett, 181 S.W.3d 248, 250 (Mo. Ct. App. 2006).

The policy provides:

4

**SECTION V – WHAT YOU MUST DO AFTER AN ACCIDENT OR LOSS**

\* \* \*

**3. PRESERVE OUR RIGHT TO RECOVER PAYMENTS**

\* \* \*

> **b.** The person to or for whom payment is made under Uninsured Motorist Coverage and/or Underinsured Motorist Coverage must hold in trust for us his rights of recovery against any legally liable person. He must do all that is proper to secure such rights and must do nothing to prejudice them. He must taken [sic] any required action in his name to recover damages and reimburse us out of any proceeds to the extent of our payment.

While there is a difference between reimbursement and subrogation, Missouri policy invalidates both types of clauses equally in the personal injury context. See, e.g., Travelers Indem. Co. v. Chumbley, 394 S.W.2d 418 (Mo. Ct. App. 1965); Waye v. Bankers Multiple Line Ins. Co., 796 S.W.2d 660, 661-62 (Mo.App.W.D. 1990). Therefore, I need not determine whether the clause here provides for reimbursement or subrogation recovery unless I find that Missouri policy does not invalidate such a clause under these circumstances.

As a result, resolution of this case turns on one key question: Does Missouri policy prohibit insurers from gaining subrogation recovery for underinsured motorist ("UIM") payments made to an insured after the insured settles with and releases the tortfeasor for less than his full liability after it has been reduced to a judgment? The Missouri Supreme Court has not addressed this issue. As a result, to answer this question, I must determine how the Missouri Supreme Court would decide the question. The analysis begins with a review of any pertinent decisions of the Missouri Supreme Court. Troknya v. Cleveland Chiropractic Clinic, 280 F.3d 1200, 1207 (8th Cir. 2002). If no Supreme Court decisions are available, a district court looks at lower court decisions and other reliable state law authorities. Id.

Subrogation allows an insurer to "step into the shoes" of an insured and assert in equity the rights the insured has against the wrongdoer. Kroeker v. State Farm Mut. Auto. Ins. Co., 466 S.W.2d 105, 110 (Mo. App. 1971). Since the insurer's subrogation rights are derived from the insured's rights, an insurer generally may not maintain an action in its own name to recover an insured's damages. Hagar v. Wright Tire & Appliance Inc., 33 S.W.3d 605, 610 (Mo. App. 2000). Likewise, an insurer will often lose its rights of recovery when an insured settles with and releases the tortfeasor. Dickhans v. Missouri Prop. Ins. Placement Facility, 705 S.W.2d 104, 106 (Mo. Ct. App. 1986).

While it is generally accepted that insurers may have subrogation rights when they pay for an insured's property loss, the status of an insurer's subrogation rights for payment for an insured's personal injuries is less clear. This uncertainty stems from the "long-recognized and well-established legal principle prohibiting assignment of a cause of action for personal injury" in Missouri. Chumbley, 394 S.W.2d at 425. The purpose of the rule prohibiting assignment of a personal injury action is to prevent the trafficking of claims for the pain and suffering of others. Forsthove v. Hardware Dealers Mut. Fire Ins. Co., 416 S.W.2d 208, 215-17 (Mo.App.E.D. 1967). Over time, Missouri courts have extended the rule prohibiting assignment of personal injury claims to also prohibit insurers from gaining subrogation or reimbursement recovery in a personal injury action. See, e.g., Chumbley, 394 S.W.2d 418 (Mo. Ct. App. 1965); Jones v. Aetna Casualty & Sur. Co., 497 S.W.2d 809, 813 (Mo.App.W.D. 1973); Waye v. Bankers Multiple Line Ins. Co., 796 S.W.2d 660, 661-62 (Mo.App.W.D. 1990).

The Supreme Court of Missouri recently addressed the state's policy on subrogation recovery in personal injury cases in Nevils v. Group Health Plan, Inc., 418 S.W.3d 451, 453 (Mo. 2014). The court stated:

> Missouri law generally prohibits subrogation in personal injury cases by barring insurers from obtaining reimbursement from the proceeds an insured obtains following a judgment against a tortfeasor. See Benton House, LLC v. Cook & Younts Ins., Inc., 249 S.W.3d 878, 882 (Mo.App.2008). Subrogation in personal injury cases is considered to be against public policy because it amounts to an impermissible assignment of the insured's right to a cause of action for suffering a personal injury. See Hays v. Mo. Highways & Transp. Comm'n, 62 S.W.3d 538, 540 (Mo.App.2001). Therefore, insurance policies with reimbursement or subrogation clauses are invalid under Missouri law. Buatte, 939 S.W.2d at 442.

Id. at 453. The Nevils opinion is somewhat challenging to use for guidance because its discussion on subrogation is only three sentences in length. Pruitt argues that Nevils provides a clear statement of Missouri policy, and that it's prohibition on subrogation and reimbursement recovery in personal injury cases is far-reaching and includes circumstances where a cause of action has been reduced to a judgment. Auto-Owners contends that the language in Nevils is limited to situations where insurers seek "reimbursement from the proceeds an insured obtains" from a tortfeasor. Because Auto-Owners seeks recovery directly from Pruitt, and not from Apperson, Auto-Owners argues that Nevils does not apply. Rather, Auto-Owners argues that this case fits into the framework provided by Marshall v. Northern Assurance Co. of America, 854 S.W.2d 608 (Mo. App. 1993), which allowed an insurer to seek subrogation recovery from an underlying tortfeasor in circumstances similar to those here.

In Marshall, an insured was injured in a car accident and sued the tortfeasor for her injuries. A judgment was entered against the tortfeasor in the amount of $45,000. The same day the judgment was entered, the insured executed a Section 537.065 agreement with the tortfeasor to limit her recovery to $25,000, the tortfeasor's policy limits. Id. at 609. Afterwards, the insured took the judgment figure to her insurer and sought payment of the $20,000 balance pursuant to the underinsured motorist provision of her policy. Id. When the insurer refused to pay, the insured sued. The court was faced with the question of whether the insured breached

7

her duty to protect the insurer's subrogation rights when she released the tortfeasor for less than his full liability, relieving the insurer of its obligation to pay under the policy. The court carved out a narrow exception to the rule that once an insured settles with a tortfeasor, the insurer loses all of its subrogation rights, stating:

> [I]f a third party tort-feasor, with knowledge of an insurer's right of action as subrogee, and without the consent of the insurer, settles with the insured, the insurer's right to proceed against such tort-feasor is not affected. In such case, the primary wrongdoer, and not the insured, should repay the insurer. Whatever rights the insurer had against the tort-feasor prior to the settlement, the insurer still has.

Id. at 612 (internal citations omitted). Based on this reasoning, the court held that the Marshalls did not breach the policy when they settled with and released the tortfeasor for less than his full liability, and the insurer was obligated to perform under the policy.

The Marshall court also indicated that Missouri policy would not prohibit subrogation under the circumstances because the Marshalls had reduced their cause of action to a judgment. Id. at 610. The court reasoned that assignments of judgments are enforceable because concerns about trafficking in the pain and suffering of others no longer apply once judgment is entered. Id. The court distinguished Marshall from cases that prohibit the assignment of a personal injury cause of action because, "In each of those cases, the insured has, prior to entry of a judgment on the underlying tort action, entered into a settlement with the tortfeasor." Id. at 610. This seemingly straightforward rule has huge implications. If the court's logic is to be followed, then insurance policies can authorize subrogation rights at any time as long as the claim to be subrogated is eventually reduced to a judgment.

Assuming that Marshall was good law at the time it was decided, it appears that Nevils abrogates the exceptions announced in Marshall. First, Nevils does not distinguish between assignments of judgments and assignments of causes of action. The Nevils court explicitly

8

speaks to that issue when it states, "Missouri law generally prohibits subrogation in personal injury cases by barring insurers from obtaining reimbursement from the proceeds an insured obtains following a *judgment* against a tortfeasor." Nevils, 418 S.W.3d at 453 (emphasis added).

Second, while Auto-Owners argues that Nevils is limited to situations where the insurer seeks reimbursement from the insured, I disagree. The paragraph quoted from Nevils, when read as a whole, clearly applies to more situations than just those where an insurer attempts to recover proceeds from an insured. The court states in very broad terms, "Therefore, insurance policies with reimbursement or subrogation clauses are invalid under Missouri law." Id. Additionally, if the court meant to limit its statement to only those situations involving reimbursement from the proceeds the insured receives, it would not have included the second sentence in that paragraph that speaks to subrogation recovery: "Subrogation in personal injury cases is considered to be against public policy because it amounts to an impermissible assignment of the insured's right to a cause of action for suffering a personal injury." Id.

Another indication that the Nevils court intended to state a broad rule is found in its citations. As part of its subrogation discussion, the court cites to Buatte v. Gencare Health Systems, Inc., 939 S.W.2d 440 (Mo. Ct. App. 1996), which held:

> Missouri law, as a matter of public policy, does not allow an insurer to acquire part of the insured's rights against a tortfeasor through the payment of medical expense, either by assignment or subrogation. *Waye v. Bankers Multiple Line Ins. Co.,* 796 S.W.2d 660 (Mo.App.1990). Insurance policies which attempt to do so are, therefore, invalid under state law.

Id. at 441-42.

In Hays v. Mo. Highways & Transp. Comm'n, 62 S.W.3d 538, 540 (Mo.App.2001), another case cited by Nevils, the court provides additional insight on Missouri's subrogation laws. In Hays, the court noted that there are exceptions to the general rule prohibiting subrogation in personal injury cases. Id. It then addressed those exceptions: Missouri's

9

uninsured motorist statute, Missouri Revised Statutes § 379.203 (2014), and a statutory exception under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq*. Id. Similarly, Missouri's Workers' Compensation Act provides employers with a right to subrogation recovery against a responsible third party. MO. REV. STAT. § 287.150.1 (2014). Notably, each of these exceptions were created by the legislature, the body tasked with determining the public policy of this state. In contrast, there is no statutory exception for subrogation recovery in the underinsured motorist context, which indicates that the legislature did not intend to create such an exception.

Finally, any determination about how the Missouri Supreme Court would decide the issue before me must be informed by the state's longstanding approach to subrogation recovery in personal injury cases. Even assuming that Nevils does not abrogate the exception that Marshall created, I am not convinced that the exceptions in Marshall are consistent with Missouri's general policy prohibiting subrogation in personal injury actions. Other courts have been very reluctant to create such exceptions. See Chumbley, 394 S.W.2d at 425 ("[W]e find no consideration of 'public policy' which would justify us in ignoring, hewing through, or carving an exception in, that legal principle for the purpose of enabling instant plaintiff (and those of like inclination) to become subrogated as to medical payments coverage and thereby, so we think, lifting the lid on a Pandora's box crammed with both practical and legal problems."); see also Waye, 796 S.W.2d at 661.

Upon review of the record and relevant Missouri law, I find that the subrogation or reimbursement clause in Apperson's policy is invalid as against Missouri public policy. To find otherwise would require me to conclude that the Missouri Supreme Court did not really mean what it said in Nevils, and I am not prepared to do that. Having found that Missouri policy

10

invalidates the subrogation or reimbursement clause in Apperson's policy, it is clear that equitable recovery, which is even less favored than contract-based subrogation, would likewise be inappropriate. See Ethridge v. TierOne Bank, 226 S.W.3d 127, 134 (Mo. 2007) (equitable subrogation is "a fairly drastic remedy . . . usually allowed only in extreme cases 'bordering on if not reaching the level of fraud.'"). There is no allegation that Apperson and Pruitt engaged in fraudulent activity in this case. As a result, Auto-Owners is not entitled to subrogation recovery from Pruitt on either of its claims. I find that Pruitt is entitled to summary judgment in his favor on all counts of Auto-Owners' complaint.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Pruitt's Motion for Summary Judgment #[61] is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff Auto-Owners' Motion for Summary Judgment #[67] is **DENIED**.

**IT IS FURTHER ORDERED** that any pending motions are **DENIED** as moot.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 18th day of February, 2015.